UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAUREEN ANN SHAFFRON,

    Plaintiff,

v.                                                                                     Case No.  8:20-cv-2930-WFJ-SPF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

    I.    **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 16).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 108, 114).  Plaintiff then requested an administrative hearing (Tr. 120).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 33–72).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 16–25).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6).

Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning September 16, 2017 (Tr. 93, 95). Plaintiff completed four or more years of college (Tr. 194). Plaintiff's past relevant work experience included work as a public relations specialist (Tr. 24). Plaintiff alleged disability due to severe depression, severe anxiety, and sleep apnea (Tr. 193).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since September 16, 2017, the alleged onset date (Tr. 18–19). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), obesity, anxiety, depression, and post-traumatic stress disorder ("PTSD") (Tr. 19). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> No climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks; no fast-paced production; low stress work defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with co-workers and supervisors; and no interaction except incidental with the public.

2

(Tr. 21).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 22).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 24).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a dishwasher, laundry laborer, and marker (Tr. 25).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397,

1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV. Analysis

Plaintiff argues here that the ALJ erred by (1) failing to properly perform a psychiatric review technique analysis; (2) failing to account for a moderate limitation in the area of understanding, remembering, and applying information when formulating Plaintiff's RFC; and (3) failing to properly consider the opinion of Marcia Spencer, ARNP.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.     Psychiatric Review Technique Analysis

First, Plaintiff argues that the ALJ failed to properly perform a psychiatric review technique analysis as he relied heavily on evidence outside the relevant time period as part of this analysis and improperly ignored evidence from the relevant time period. In response, the Commissioner argues that the ALJ properly performed the PRT analysis. Where a claimant has a "colorable claim of mental impairment," the ALJ must "complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1213, 1214 (11th Cir. 2005). Essentially, the psychiatric review technique form ("PRTF") requires the ALJ to assess how a claimant's mental impairments impact four broad categories: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). A five-point scale is used to rate the degree of limitation: "None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). The Social Security regulations simply require the ALJ to use the "special technique" dictated by the PTRF for evaluating mental impairments" and "incorporate the results of this technique into the findings and conclusions." *Moore v. Barnhart*, 405 F.2d 1208, 1213-14 (11th Cir. 2005). In this case, the ALJ incorporated the results of the PRTF into his "Findings of Fact and Conclusions of Law" (Tr. 20–21).

In the "Findings of Fact and Conclusions of Law" section, the ALJ considered Plaintiff's mental impairments, singly and in combination, and opined that Plaintiff did

not meet or medically equal the criteria of any of the listed impairments (Tr. 19). In considering the "paragraph B" criteria, the ALJ found Plaintiff had a moderate limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself (Tr. 20). Because the ALJ found that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, he concluded that the "paragraph B" criteria were not satisfied (*Id.*). The ALJ stated that his RFC assessment "reflects the degree of limitation [he] found in the 'paragraph B' mental functional analysis" (Tr. 21).

First, Plaintiff generally argues that the ALJ improperly assessed her limitations in the areas of understanding, remembering or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself because the ALJ relied heavily on evidence outside the relevant period and improperly ignored evidence from the relevant period.[1] In response, the Commissioner argues that the ALJ's findings are supported by substantial evidence.[2] The undersigned agrees.

---

[1] Plaintiff does not challenge the finding regarding her limitation in the area of interacting with others. *See* Doc. 19 at 13–15.

[2] The Commissioner also argues that the ALJ is only required to make findings about the Paragraph B criteria, and that no supporting analysis is needed. The Court need not reach this issue, however, as substantial evidence supports the ALJ's findings. *Compare Alfarano v. Saul*, No. 8:19-cv-2022-T-30CPT, 2020 WL 4808746, at *9 (M.D. Fla. Aug. 1, 2020) ("[W]hile I agree with the Plaintiff that the ALJ's analysis of the Paragraph B criteria could have been more robust, I find that the ALJ did all that the regulations require him to do—he rated the degree of limitation in the four functional areas.") *with Stanley v. Colvin*, No. 5:13-cv-1969-KOB, 2015 WL 527070, at *10 (N.D. Ala. Feb. 9, 2015) ("Without a proper explanation for the ALJ's conclusion about how the claimant's mental impairment impacted the four functional areas, the court cannot properly review the ALJ's decision.").

While evidence predating the alleged onset date is often of limited relevance, it can be relevant in certain circumstances, particularly where it relates to the conditions a claimant alleges to be disabling. *See Nichols v. Comm'r of Soc. Sec.*, No. 6:16-cv-1819-Orl-DCI, 2018 WL 746940, at *3 (M.D. Fla. Feb. 7, 2018) (stating that "pre-onset date evidence is significant so long as such evidence is 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments") (citations omitted); *see also Taylor v. Kijakazi*, No. 2:20-cv-00611-SRW, 2022 WL 891833, at *5 (M.D. Ala. Mar. 25, 2022) (stating that medical evidence predating the alleged onset date tends to be relevant when it relates to the conditions a claimant claims are disabling).

Here, the evidence the ALJ relied on included mental health examinations from 2014 through 2019. This evidence clearly relates to Plaintiff's depression and anxiety, which are the conditions she alleges are disabling (Tr. 193). The evidence is also within sufficiently close proximity to the alleged onset date, as Plaintiff stated in 2017 that she had been suffering from depression and anxiety for over six years (Tr. 452, 462). Moreover, as the Commissioner points out, the ALJ also relied on pre-onset evidence in Plaintiff's favor. Indeed, the ALJ often relied on older evidence to support a higher degree of limitation in each functional area. For example, in the area of understanding, remembering, and applying information, the ALJ referenced a 2016 examination finding intact memory (Tr. 20, 591). He then referenced a 2014 examination in which Plaintiff was found to have a tangential thought process and a 2015 examination in which Plaintiff reported difficulty with memory (Tr. 20, 657, 587).

Considering the relevance of this evidence, Plaintiff's argument is, in essence, that the ALJ should have relied on *other* evidence in conducting his PRT analysis. This is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . .") (alterations in original); *cf. Fritts v. Saul*, No. 1:20-00064-N, 2021 WL 1183807, at *10 (S.D. Ala. Mar. 29, 2021) ("[T]he fact that Fritts can cite to some evidence cutting against the ALJ's creditability determination does not warrant reversal, as an ALJ's factual determinations, if supported by substantial evidence, must be upheld even if the evidence preponderates against them.").

Outside of the ALJ's reliance on pre-onset evidence, Plaintiff also challenges the ALJ's analysis in each functional area. With regard to the area of understanding, remembering, or applying information, the ALJ stated that Plaintiff had a moderate limitation in part because Plaintiff "reported having the ability to look for employment" (Tr. 20). Plaintiff argues that one statement made to a mental health provider does not provide any probative information as to her ability to understand, remember, or apply information. As an initial matter, Plaintiff discussed looking for employment on multiple occasions (Tr. 676, 477, 479). Regardless, courts have noted that the ability to look for employment is indicative of less severe limitations in each functional area. *See, e.g.*, *Tisell v. Comm'r of Soc. Sec.*, No. 2:14-cv-368-FtM-CM, 2015 WL 7272303, at *2 (M.D. Fla. Nov.

9

18, 2015) (discussing ALJ's finding that Plaintiff has only a moderate limitation in the area of concentration, persistence, or pace because Plaintiff regularly looked for work). Even if this analysis was flawed, however, any error would be harmless considering the ALJ's consideration of evidence noting that Plaintiff had intact memory, tangential thought process, cognitive dysfunction, and difficulty with memory (Tr. 20).

With regard to the area of concentrating, persisting, or maintaining pace, the ALJ cited Plaintiff's ability to follow along and answer questions at the hearing. Plaintiff argues that this was error because the ALJ failed to mention that he had to ask Plaintiff if she was ok on multiple occasions and had to have Plaintiff take two breaks during the hearing. As an initial matter, this was not improper, as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Plaintiff also suggests that, by referencing Plaintiff's ability to answer questions at the hearing, the ALJ engaged in "sit and squirm" jurisprudence. "Sit and squirm" jurisprudence occurs when "an ALJ who is not a medical expert [] subjectively arrive[s] at an index of traits which he expects the claimant to manifest at the hearing" and denies the claim if the claimant does not exhibit these traits. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (quotation omitted). In this Circuit, however, it is not inappropriate for the ALJ to observe and comment upon a claimant's demeanor as long as that observation is not offered as the sole basis for discounting the Plaintiff's credibility. *See Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987) (citing *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ commented on Plaintiff's ability to answer questions at the hearing in assessing the severity of Plaintiff's limitations in the area of concentrating, persisting, or maintaining pace. The ALJ did not predicate his finding that Plaintiff was not disabled merely on this observation. In fact, the ALJ did not even predicate his finding that Plaintiff has a moderate limitation in the area of concentrating, persisting, or maintaining pace on this observation. Rather, the ALJ also considered medical records in which Plaintiff was found to have intact attention and concentration, an examination finding that Plaintiff had scattered attention, and Plaintiff's testimony that she had difficulty with focus and concentration (Tr. 20). Accordingly, the ALJ did not improperly engage in "sit and squirm" jurisprudence.

Finally, with regard to the area of adapting or managing oneself, the ALJ cited to Plaintiff having a "good general appearance" and "appropriate dress." Plaintiff argues that the ALJ erred in including this reasoning because an ability to dress appropriately is not by itself an indicator of adaptability. To support this conclusion, Plaintiff relies on *Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908, 922 (11th Cir. 2021).[3] In *Simon*, the Eleventh Circuit stated that "many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities. None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis." *Id.* In *Simon*, however, the ALJ discounted a medical opinion on disability because it was

---

[3] The decision was subsequently withdrawn and superseded on rehearing by *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021). The proposition cited by Plaintiff was also included in the subsequent opinion.

inconsistent with the claimant's ability to feed himself, dress himself, and shop. *Id.* Here, the ALJ merely considered Plaintiff's appearance (among other factors) in assessing her ability to adapt and manage herself. In other words, it may be improper to rely on a claimant's ability to dress appropriately to discredit a medical opinion that a claimant is suffering from impairments which limit the claimant's ability to function appropriately in the workplace (as was the case in *Simon*), but it is not improper to consider a claimant's ability to dress appropriately when considering a claimant's ability to adapt and manage oneself. Indeed, courts have often found that this constitutes substantial evidence supporting moderate limitations in this functional area. *See, e.g.*, *Harvey v. Soc. Sec. Admin., Comm'r*, No. 4:20-cv-401-SGC, 2021 WL 4458868, at *5 (N.D. Ala. Sept. 29, 2021) ("Finally, as for adapting or managing oneself, . . . Dr. Robertson described Harvey as having normal appearance and behavior. Substantial evidence supports the ALJ's findings that Harvey was only moderately limited in function for the 'paragraph B' criteria."); *Bettis v. Saul*, No. 1:19-00934-N, 2021 WL 1183797, at *8 (S.D. Ala. Mar. 29, 2021) (citing claimant's "proper appearance and hygiene at his medical appointments, with no reported grooming issues" in support of finding moderate limitations in the domains of interacting with others and adapting or managing oneself).

Against this backdrop, the undersigned concludes that the ALJ properly addressed Plaintiff's limitations in accordance with the PRTF. *See, e.g.*, *Bianco v. Comm'r of Soc. Sec.*, No. 2:18-cv-570-FtM-NPM, 2019 WL 4727812, at *5 (M. D. Fla. Sept. 27, 2019) (district court found that ALJ properly incorporated PRTF analysis in his decision and that decision was supported by substantial evidence); *Taviere v. Comm'r of Soc. Sec.*, No. 8:18-

cv-1182-T-JSS, 2019 WL 4164961, at *4 (M.D. Fla. Sept. 3, 2019) (ALJ incorporated "special technique" by explaining in her findings and conclusions the evidence of record supporting her finding that plaintiff had only mild limitations in all four functional areas).

### B.  RFC

Next, Plaintiff argues that, in fashioning her RFC, the ALJ failed to account for the step two finding that Plaintiff has moderate limitations in understanding, remembering, and applying information (Doc. 19 at 22). In response, the Commissioner argues that the ALJ's RFC assessment adequately accounts for the moderate limitation in the area of understanding, remembering, and applying information (*Id.* at 26).

As detailed above, when an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs the PRT to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). *See Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005). The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Here, the ALJ found that Plaintiff had moderate limitations in all four areas (Tr. 20–21). The ALJ also found at steps two and three that Plaintiff had severe mental impairments but did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 19). Consequently, the ALJ proceeded through the sequential evaluation process and assessed Plaintiff's RFC. The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 21).

Specifically, the ALJ included the following relevant limitations in Plaintiff's RFC: able to understand, remember, and carry out simple tasks; no fast-paced production; and low stress work defined as only occasional decision-making and only occasional changes in the work setting (*Id.*). Plaintiff argues that the RFC limitation of carrying out simple instructions does not adequately account for a limitation on the length of instructions, because a limitation to simple instructions relates to the *complexity* of instructions, not the *length* of instructions. The flaw in Plaintiff's argument is that there is no evidence suggesting the ALJ found that Plaintiff should be limited to short instructions. Indeed, Plaintiff argues that the ALJ's finding that Plaintiff has a moderate limitation in the area of understanding, remembering, and applying information "suggests" that Plaintiff's impairment would have "at least some type of difficulty with remembering instructions depending on their length" (Doc. 19 at 24). But Plaintiff has cited to no evidence in the record suggesting she requires a limitation on the length on instructions. Nor has she cited any authority for the proposition that a moderate limitation in the area of understanding, remembering, and applying information necessarily requires a limitation on the length of

14

instructions. While cases analyzing moderate limitations in the new functional area of understanding, remembering, and applying information are few and far between,[4] courts have generally held that a limitation in the RFC to simple or routine tasks is sufficient. *See, e.g.*, *William S. V. v. Kijakazi*, No. 19-cv-0498-CVE-JFJ, 2021 WL 3722331, at *4 (N.D. Okla. Aug. 23, 2021) (RFC limiting plaintiff to simple, repetitive tasks adequately accounts for moderate limitation in the area of understanding, remembering, and applying information); *see also Karlin v. Saul*, No. 20-3113, 2021 WL 2036649, at *4 (E.D. Pa. May 21, 2021) (ALJ adequately explained how moderate limitation in area of understanding, remembering, or applying information was incorporated into RFC where ALJ stated she accounted for it by limiting claimant to unskilled work and occasional interaction with the public).

Here, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's moderate limitation in the area of understanding, remembering, and applying information is accounted for by including a limitation to simple tasks in her RFC. As mentioned by the ALJ, Plaintiff reported memory difficulty to Dr. Maas in 2015 (Tr. 433). There were also mental status examinations showing intact recent and remote memory (Tr. 592, 657). In November 2019, no memory problems were indicated (Tr. 668). In January 2020, ARNP Spencer indicated that Plaintiff had minimal or no impairment to

---

[4] 20 C.F.R. § 404.1520(a)(c)(3), establishing the four functional areas an ALJ is required to assess, was revised in January 2017. The four areas of functioning were previously: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

her ability to remember locations, work-like procedures, and short and simple instructions (Tr. 488).

Additionally, the hypothetical question to the VE upon which the ALJ relied limited Plaintiff to understanding, remembering, and carrying out simple tasks (Tr. 65). For the reasons stated above, the substantial record evidence shows that Plaintiff's limitation to understanding, remembering, and carrying out simple tasks accounts for her moderate limitation in understanding, remembering, or applying information. Accordingly, the ALJ did not err in failing to include a limitation on the length of instructions in his hypothetical to the VE.

### C. Consideration of Medical Opinions

Finally, Plaintiff argues that the ALJ did not properly consider the opinions of Marcia Spencer, ARNP. As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

16

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[5]  20 C.F.R. §

---

[5] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

17

404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

In January 2020, ARNP Spencer completed a form titled "mental residual functional capacity assessment," in which she opined that Plaintiff had minimal to occasional or mild limitations in the area of understanding and memory (Tr. 488). She also opined that Plaintiff had mild to marked limitations in the area of sustained concentration and persistence (*Id.*). She opined that Plaintiff had marked to moderate limitations in the area of social interaction, and mild to moderate limitations in the area of adaptation (Tr. 488–89). She also opined that Plaintiff has been "disabled from substantial gainful work since 9/16/2017" (Tr. 489). She did not provide any additional supporting information for her opinions on the form (*Id.*).

> The ALJ stated the following regarding ARNP Spencer's opinions:
>
> The undersigned finds not persuasive the opinions of Marcia Spencer, PMHNP, in January 2020, which includes the claimant has marked mental limitations. Nurse practitioner Spencer's opinions are not consistent with the record, as she overstates the claimant's mental limitations. For example, the claimant had no psychiatric hospitalizations subsequent to the alleged onset date. Therapy notes demonstrate improved symptoms. In addition, nurse practitioner Spencer's opinions are not supportable, as an adequate explanation does not support the conclusions. Therefore, the undersigned finds the opinions not persuasive.

(Tr. 23) (citations omitted).

The ALJ's consideration of ARNP Spencer's opinions tracks the regulation's requirements. With respect to consistency, the ALJ explained that ARNP Spencer's

18

opinion overstates Plaintiff's mental limitations, because Plaintiff had no psychiatric hospitalizations and therapy notes demonstrate improved symptoms. Substantial evidence supports the ALJ's consistency finding, as the record is devoid of any evidence of hospitalization and Plaintiff's symptoms were described as improving on several occasions, including in her own testimony (Tr. 43, 60, 450, 472, 474, 680, 682, 684, 688). With respect to supportability, the ALJ noted that ARNP Spencer did not accompany her conclusions with any supporting explanation. Substantial evidence also supports this finding, as ARNP Spencer's own treatment notes provide that Plaintiff has been "feeling better," has been "managing well," and that she feels her medications are working well (Tr. 676).

Plaintiff argues that the ALJ erred by noting that ARNP Spencer's opinion *included* findings of marked limitations, and states that the ALJ appears to have misread the opinion because it also included mild and moderate limitations. The ALJ is not required to reference every finding in the questionnaire, and Plaintiff's statement is mere speculation. She also argues that the ALJ erred in referencing any improvement in Plaintiff's symptoms, because there are also records demonstrating that Plaintiff's symptoms stayed the same or were worse. This argument is, in essence, a request that the Court reweigh the evidence, which it cannot do. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

### V.     Conclusion

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be affirmed.

2. The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

    IT IS SO REPORTED in Tampa, Florida, on this 19th day of July 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

    A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

cc:    Hon. William F. Jung

       Counsel of Record